Doyle, J.
The board of commissioners of Lorain county, the co-defendants of the Lorain Democrat Co. herein, pursuant to Section 2508; General Code, gave to the defendant, the Lorain Democrat Company, their last annual report of their financial transactions during the year next preceding the third Monday of September, 1910, for publication in the Lorain Post, a newspaper printed by said defendant in Lorain county in the German language.
The plaintiff brings this action to .enjoin such publication and to enjoin the commissioners from paying for such publication.
It was contended by the relator that the newspaper in question did not meet the requirements of Section 2508, General Code (R. S., 917).
According to the statute, in order to be qualified to make such publication, it must have had “a tona fide general circulation of not less than six hundred among the inhabitants of such county speaking that language. ’ ’
The evidence shows that the paper has a tona fide circulation of over six hundred among subscribers of whom 93 spoke German only, and 594 spoke both German and English. As to the • other subscribers there was no evidence as to their ability to speak German.' There w.as some contention made that the subscriptions were not all tona fide, but the evidence did not show that they were not tona.fide, but on the contrary fended to show that more than six hundred of the subscriptions were tona fide. This makes its circulation tona fide.
It was further contended that the circulation should have been among the inhabitants speaking that language only. The statute does not warrant such a construction. In fact the requirements of the statute would have been met, if every subscriber were able to speak several languages, including German.
The relator claimed with a strong showing in favor of his position that the Lorain Post did not have a general circulation *531 among the inhabitants of Lorain county speaking the German language.
If the use of the word “general” in this connection means that the Post should have a circulation among the various German speaking communities of the' county, substantially in proportion to its entire circulation, that the number of German speaking inhabitants of that community bears to the total number bf German speaking' people of the county, then the plaintiff’s, position would be correct. Even if it meant that it should only approximate such a proportion the court would feel .constrained to sustain his contention. . . "
But, the use of the word “general” in connection with circulation of a newspaper, while it may refer somewhat to the extent of its circulation through a given’community, in the main refers to the character of the paper and the purpose of its publication, whether, designed to represent some special interest, business, trade, society, religion, organization or whether designed for circulation as the disseminator of intelligence of passing events, local and general news and items of common interest.
A paper of general circulation is one not devoted to any single or particular .object, but is devoted to matters pertaining to and of concern to the whole community and of public and common interest. The purposes to which the paper is devoted must be of common interest to many.
There is. no evidence in this case to show that the Lorain Post was not a paper published for general circulation, to give the news and items of common interest to all persons who might .care to take the paper.
The paper being printed in the German language was intended for general circulation among people who could use that language. .
- The evidence shows that the greatest number by a large majority, of the subscribers had their papers delivered to them in the city of Lorain, or through the post office in Lorain. Some of the subscribers in Brownhelm township as well as Black River township got their mail at Lorain. Some of the Brownhelm people got mail at Vermilion and Amherst, where papers were *532 sent to .subscribers. The following schedule shows about how the other subscribers were distributed:

The people of Sheffield get mail at Lorain, and it is estimated that there are from 300 to 500 German speaking people in that township.
In La Grange there are about forty families who speak German and the number of persons in these families was estimated at two hundred. No evidence was given as to the number of German speaking people nor number of subscribers in Carlisle, Camden, Brighton, Wellington, Penfield, Rochester and Huntington.
It will thus be observed that the entire circulation is in the north half of the county, and in one-third of the townships of the county, but at the same time the circulation is in that part of the county where the great majority of the population of the county lives. There was no evidence as to the number of German speaking people in some of the southern townships, and from what evidence there is before the court it is apparent that the majority of the German speaking people of the county is in a few of the northern townships.
In a recent case from Wood county in the Supreme Court, the circuit court was affirmed where it had dismissed a petition praying an' injunction to restrain the commissioners of that county from publishing the report of the commissioners in a cer *533 tain newspaper of general circulation in the county as required by Section 2508. The Supreme Court however did not pass on the merits of the case because the finding of fact of the circuit court was held conclusive on the Supreme Court and it merely affirmed. State v. Wood Co., 14 C.C.(N.S.), 531; affirmed, no report, 84 O. S., 447.
The common pleas eoprt had granted the injunction but the circuit court found differently and dismissed, the petition.
In that case it appeared that in five of the twenty townships of the county the newspaper had no subscribers. In fifteen townships with a population of 35,457 it had a circulation of thirty-six,' or about one-tenth of one per cent. The total population of the county was 51,733. Almost the entire circulation was in five townships in the south part of the county, having a total population of 16,276.
It was held by the circuit court that the newspaper was a paper of general circulation in Wood county.
By the census of 1910, Lorain county has a population of 76,037. In six of the townships of the county where there was clearly shown to be a circulation, there is a population, as shown by the same census, of 58,565. These six townships hold 77 per cent, of the entire population of the county. This is a better showing of distribution of circulation than obtained in the Wood county ease. If the manner in which the circulation of a newspaper is distributed is to control in determining whether it is general or not, then the Lorain Post has made a better showing in that respect than the newspaper in the Wood county case, and if the court follows that case the finding should be for the defendant.
The evidence in the ease at hand' as to number of German speaking people in the several townships was largely made up of off hand estimates, except as to those in Elyria. The data on which the court is asked to predicate its judgment is to some extent rather indefinite and uncertain, and in view of the meaning which the court believes should be given to the word general in the way it is used in Section 2508, the relator On the evidence is not entitled to the relief prayed for in his petition on the propositions above discussed.
*534 The paper in question has a circulation of not less than six hundred among' the inhabitants of Lorain county speaking the German language, and being a newspaper for general circulation and not iimited to any special trade, business, society, religion or other purpose, it has a general circulation among those people.
' The relator claims that Section 2508 is unconstitutional because, first, it violates Section 2 of the Bill of Eights of the Constitution of Ohio, which declares that “all political power is inherent in the people. Government is instituted for their equal protection and benefit,” and second, Section 26, Article II, which provides: “All laws of a general nature shall have uniform operation throughout the state.”
Is this law in derogation of the equal protection and benefit of the people- for whom government is instituted ?
It was not enacted to confer any specific benefits nor make any restrictions upon the people.' It is a regulation of the manner in which publicity shall be given of certain acts and transactions of public officials. The entire omission by the legislative branch of the government to provide by statute for the publications in newspapers required by this section would be no violation of Section 2 of the Bill of Eights. The act of April 8, 1876 (73 v. 141), which on authority of Cincinnati v. Bickett, 26 O. S., 49, and Schloenbach v. State, 53 O. S., 345, required the publications provided for, in none but papers printed in the English language would not be in conflict with said Section 2. Its constitutionality has never been questioned, though publicity under it was not provided for in newspapers of more than two of the several political parties. No more in principle did the act of April 17, 1896 (92 v. 188), deprive the people of their equal protection and benefits, by further extending that publicity to those speaking the German language, if there were a sufficient number of such persons in the county in question who would subscribe for a paper printed in that language to bring it within the statutory requirements as to circulation. The object of. the law is to give publicity, not particularly to benefit any newspaper nor any class of persons. To prescribe the manner of giving the acts .and transactions of the commissioners pub *535 licity is in the province of the Legislature. If the failure to provide any publication will not deprive the people of the equal protection and benefits of government, then a provision for the publication in the recognized languagé of the people of this state will not be a deprivation, even to persons speaking a foreign language who have become inhabitants of the state, for they are bound to recognize that the language in which official business is conducted in this state is English. If then, further publicity is provided for, by publication in a newspaper printed in a foreign language spoken by a very large number of our people both native and foreign born, shall- it be said that those who understand only this language and do not take the newspaper in question together with people speaking other foreign languages have not the equal benefit and protection of'the law? If this be so then the publicity provided for in 73 O. L., 141, is a violation of the Constitution, because the logical requirement of that law was to compel a man to become a subscriber of one or the other of the two favored political papers.
The court does not believe that the section in question of the Bill of Rights was ever intended to so interfere with the modus operands, of the Legislature in carrying out the multifarious details of the people’s business.
The second objection to the constitutionality of Section 2508 is that it is not of uniform operation throughout the state. The object of the law as already stated is to carry out the policy of the state to give as much publicity as possible within reasonable bounds of the acts and transactions of the officials of the counties. It would be beyond the bounds of reason to attempt to bring home to each inhabitant notice of public matters. To -give such matters a fair and reasonable notoriety is all that should be required.
The method and extent of the publication provided in this instance by the Legislature is uniform in that it applies to every county which now has or may hereafter have the prescribed newspapers by which such publication can be made. There is no classification of counties except such as naturally and necessarily follows from an attempt to provide a uniform method of giving publicity upon some proper and reasonable plan that in *536 the wisdom of the Legislature will approximately attain the required object of its policy with no absurd consequences. A law of a general nature may have universal operation throughout the state, within the meaning of Section 26, Article II of the state Constitution, although it is not universal in its operation, in that the conditions upon which it can operate and become effective do not exist in certain political subdivisions of the state. Columbus v. Jeffrey, 2 N.P.(N.S.), 85, affirmed in Jeffrey v. State, 4 C.C.(N.S.), 494.
If there is want of uniformity because there are some counties that do not now have or may not at some future time have a newspaper printed in the German language that measures up to the requirements of the statute, then you may find many other cases of want of uniformity in our statutes, and you need look no farther than the portion of this section relating to publications in English papers. In some counties where two papers of different political parties are published there must be publication in two newspapers and where there are not two such papers published, then there shall be a publication in but one paper.
The newspaper case cited by the relator, State v. Chamberlain (N. J.), 24 Atl., 478, involved the constitutionality of a law directing that “in all cities in which a newspaper printed in the German language shall have been published at least once a week for a period of not less than three years prior to the passage of this act, such newspaper printed in the German language shall be designated as an official newspaper of the city.” It was held that this law was not of uniform operation. By its terms it only applied to cities which at that time had newspapers having the designated qualification.
If Section 2508 limited the counties in which publications in German newspapers were to be made to those counties only in which at the time of the passage of the act there were such papers as had the designated qualifications, then it would not have had uniform operation.
This was the infirmity of the Summit county depository law (86 v. 70) passed on in State v. Ellet, 47 O. S., 90.
Section 2508 was not designed to characterize nor define the county in which publications were to be made in the several *537 ways prescribed, but to designate the manner in which publications were to be made according to the means existing in the counties of the state for giving publicity to the transactions of the commissioners of such counties. The number and kind of newspapers published in the several counties also indicate somewhat the necessity of much or little publication to give the publicity required; it furnished a scheme of publicity regulated by the local conditions in the counties of the state in such a way that the means of publicity were, as near as practicable, uniform, fair, reasonable, and adapted to the needs of the people according to local conditions. “A law is general and uniform that applies to all persons and things coming within its provisions throughout the state. Its uniformity consists in the fact that no person or thing, of the description, of any persons or thing affected by it, is exempt from its operation.” Heck v. State, 44 O. S., 536, 539.
The supplement to Section 917, Revised Statutes (91 O. L., 376), passed upon in State v. Comm’rs, 9 C. D., 90, clearly limited the counties in which folding circulars should be used without any means for adapting other counties, by reason of changed conditions, to its provisions.
On account of the distinctions which the court has endeavored to make above, this case is not like the Saturday half holiday ease passed upon in Cuyahoga Circuit Court (37 Bull., 194), as well appears when a careful consideration is given to the quotation cited by relator from State v. Hammer, 42 N. J. L., 435, as follows;
“But the true principle requires something more than mere designation by such characteristics as will serve to classify. For the characteristics, which thus serve as the basis for classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having a reference to the subject-matter of the proposed legislation between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree at least, account for or justify the restriction of the leg *538 islation. Or to state it differently though not so well, the true, practical limitation of the legislative power to classify is, that the classification shall be upon some apparent natural reason, some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation in respect to them."
The issues are found with the defendant, the Lorain Democrat Company, and the petition of the relator is dismissed.